Belknap,
No. 4900.

FLORENCE D. SANBORN *v.* LUCIEN S. KEROACK & *a.*

Argued May 2, 1961.

Decided May 31, 1961.

*Harold E. Wescott* and *Peter V. Millham* (*Mr. Millham* orally), for the plaintiff.

*Normandin* and *Normandin* (*Mr. F. A. Normandin* orally), for the defendants.

LAMPRON, J.    The main issue to be decided is whether the defendants have a right to use the driveway on the westerly side of plaintiff's premises to reach the property which they acquired from Gertrude M. Landry.

The parties are in agreement that the Keroacks have the right to use this driveway to reach their property at the corner of Main and Pine Streets by virtue of a grant of the use thereof in the deed from Wiley and Dow to the Conlys dated November 5, 1940 to which the Keroacks succeeded on April 17, 1941.    The language of this grant was the following:  "Said grantees, their heirs and assigns, are to have the right to use in common with others the above-mentioned driveways from Pine Street and from Main Street to the rear of the lot herein conveyed; said driveways being the property of said grantor Wiley."

On September 12, 1942, Wiley and Dow conveyed to plaintiff Sanborn the premises over the westerly side of which the driveway from Pine Street is situated. This conveyance was made "Subject to a right of way over the driveway which runs on the west side of the above described property." She maintains that this language was intended to make her property subject only to the right of way previously granted to the Conlys and by them to the defendants which is appurtenant to the premises at the corner of Main and Pine Streets and that the wording "subject to a right of way" so indicates. She also maintains that there was no need of a right of way from Pine Street to the remaining land of Wiley and Dow because there was sufficient access to it from Main Street. She further argues that Wiley and Dow had some doubt they had such a right of way because in the deed of their remaining tract to Landry they used the words "together with whatever right of way over and across said Sanborn land may be appurtenant to the above-described premises."

In construing the language used in a deed "it is the duty of the court to place itself as nearly as possible in the situation of the parties at the time the instrument was made, that it may gather their intention from the language used, viewed in the light of the surrounding circumstances." *North Hampton District* v. *Society*, 97 N. H. 219, 220.

When Wiley and Dow conveyed to the plaintiff there was a two-stall garage on part of their remaining property. In their prior conveyance to the Conlys, the grantors referred to this garage as follows: "The two-stall garage now located on property of said Wiley and belonging to said grantor Dow is hereby conveyed to these grantees. The land on which said garage is located is to be leased by the said Wiley to these grantees." A five-year lease was executed the same day, viz. November 5, 1940, and on April 17, 1941 the Conlys conveyed this garage and assigned this lease to the defendants when they conveyed the corner property to them.

The garage faced toward Pine Street. The husband of Gertrude M. Landry to whom Wiley and Dow conveyed their remaining land in 1946 on part of which the garage was located, testified that when he lived on the premises, from 1946 to March 1958, "If I came off of Pine Street, which I did a lot of times . . . I cut right in from Pine Street to the Sanborn driveway . . . which I had a right to use." He also testified that he made use of that driveway whenever it suited his purposes and that when the property was bought the

Wileys pointed out the boundaries to him and they walked over the driveway on the Sanborn premises.

Defendant Lucien Keroack testified that from 1941 when they purchased the corner property and the garage in question, he and whatever tenant rented the other stall would get to the garage mostly through Pine Street. The reason being that "in order to come in from Main Street there was an awful lot of finagling to do in order to get in there. Coming in on the Main Street you couldn't very well do it, especially on a winter day when there was snow piled up around there. You couldn't very well get in."

As owner and lessor of the land on which this garage was located when the conveyance to the plaintiff was made the grantor Wiley had a reason to preserve this easier mode of access. From having lived in the immediate vicinity since 1915, the plaintiff could be found to have known that the driveway over the land she was purchasing was being used to reach the two-stall garage on the grantor's remaining land. *McCleary* v. *Lourie*, 80 N. H. 389. The use by the grantors of the words "a right of way" did not necessarily limit it to the Conly "right to use in common with others" the driveway from Pine Street. On this evidence the Trial Court could properly find and rule that in their conveyance to the plaintiff, the grantors reserved a right of way over the driveway from Pine Street to reach their remaining land. *Sakansky* v. *Wein*, 86 N. H. 337, 339.

This right was conveyed to Gertrude M. Landry in 1946 when Wiley and Dow deeded her their remaining premises "together with whatever right of way over and across said Sanborn land may be appurtenant to the above-described premises." By deed of Landry in 1957 the defendants obtained a right of way over the plaintiff's land to reach that part of the premises on which the two-stall garage was formerly located. II American Law of Property, *s.* 8.74; Restatement, Property, *s.* 488.

*Petition denied.*

All concurred.